**ROCK ISLAND INDEPENDENT SCHOOL DISTRICT NO. 907, Appellant,**

v.

**COUNTY BOARD OF SCHOOL TRUSTEES OF COLORADO COUNTY, Texas et al., Appellees.**

**No. 51.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Jan. 3, 1968.

Rehearing Denied Jan. 31, 1968.

Hollis Massey, Columbus, and J. C. Hinsley, Austin, for appellant.

M. L. Null and Joseph P. Kelly and Proctor, Houchins, Anderson, Smith & Null, Victoria, for appellee.

TUNKS, Chief Justice.

On January 12, 1967, the County Board of School Trustees of Colorado County, Texas, acting pursuant to Article 2922a, Vernon's Ann.Tex.Civ.St., passed a resolution annexing Rock Island Independent

School District No. 907 to Eagle Lake Independent School District No. 903. Rock Island Independent School District No. 907, acting through its Board of Trustees, filed suit in the District Court of Colorado County to set aside that order of annexation. The case was tried to a jury. After receiving evidence, when both parties had rested, the trial judge, being of the opinion that there were no questions of fact, withdrew the case from the jury and rendered judgment holding the action of the County Board of School Trustees of Colorado County, Texas valid. Rock Island Independent School District No. 907 has appealed.

In this opinion, the names of the parties will sometimes be abbreviated. Rock Island Independent School District No. 907 will be called Rock Island; Eagle Lake Independent School District No. 903 will be called Eagle Lake; County Board of School Trustees of Colorado County, Texas, will be called County Board.

Though the record in this appeal is voluminous; the attacks of Rock Island on the action taken by the County Board may be summarized as falling within these areas: Article 2922a, V.A.T.S., on which the County Board action was based, is unconstitutional. There was no substantial evidence to support the County Board's action. The January 12, 1967, meeting of the County Board, and the passing of the questioned resolution, were unlawful because the passing of the resolution was the result of an unlawful conspiracy in which three of the County Board members participated; because there was insufficient notice and erroneous notice to one of its members, Class, and such notice resulted in his absence from the meeting; because of the misinformation given to one of the Board members, Beken, which misinformation resulted in his voting for the questioned resolution when he otherwise would have voted against it; and because a purported member of the County Board, Engstrom, participated in the meeting and voted for

the resolution when he was not a lawfully qualified member. The appellant also challenges the action of the trial court in excluding certain testimony.

We examine first the question of the constitutionality of Article 2922a, V.A.T.S.

This Article, before amendment in 1947, gave County School Trustees authority to annex an independent school district having less than 250 scholastic population to a contiguous independent school district in the same county having 250 or more scholastic population, "upon the approval of the board of trustees of each school district affected."

In 1947, that statute was amended by, among other things, eliminating the requirement that the county school trustees' act of annexation be upon approval of the boards of trustees of the districts affected. The caption of the amendatory act of 1947 does not make specific reference to the elimination from Article 2922a of the requirement of the approval of the boards of trustees of the districts affected by the order of annexation. It is the position of the appellant that, for that reason, the enactment of the amendatory act violated Article III, Sec. 35 of the Constitution of the State of Texas, Vernon's Ann.St., and the Statute, as amended, is unconstitutional.

This precise question has been ruled upon twice by the Courts of Civil Appeals. Adkins v. Rogers, 303 S.W.2d 820, writ ref., n. r. e., and LaParita Independent School Dist. v. School Trustees of Atascosa County, 281 S.W.2d 123, writ ref., n. r. e. Other cases wherein annexations of school districts by county school boards under Article 2922a, as amended in 1947, without approval of the board of trustees of the districts affected, have been held valid are: Neill v. Cook, 365 S.W.2d 824, writ ref., n. r. e.; District Trustees of Campbellton Consol. Common School Dist. No. 16 v. Pleasanton Ind. Sch. Dist., 362 S.W.2d 122, writ ref., n. r. e.

■ The appellant points out that in none of the cases cited above has the Supreme Court unqualifiedly refused application for writ of error—in all of them the applications have been refused "no reversible error." That is true. Appellants' further statement that such a refusal "no reversible error" does not indicate an outright approval by the Supreme Court of the language of the Courts of Civil Appeals in the opinions is also true. Rule 483, Texas Rules of Civil Procedure. However, such qualification of its refusal of a writ by the Supreme Court does not indicate a disapproval of the language of the Courts of Civil Appeals. Furthermore, even such a qualified refusal by the Supreme Court of the applications for writ of error indicates an approval of the results reached by the Courts of Civil Appeals. Calvert "Application for Writ of Error," Appellate Procedure in Texas, Sec. 22.9; Wilson "Precedent Evaluation in Texas," 24 Texas Bar Journal, 1037; Simpson, "Notations on Applications for Writ of Error," 12 Texas Bar Journal, 547.

■ In each of the cases cited above, the facts were such that the action held lawful by the Court of Civil Appeals would necessarily have been unlawful if Article 2922a, as amended in 1947, were unconstitutional. They all affirmed actions by county school trustees in annexing school districts without the approval of the boards of the districts affected. The appellant cites no cases from the Texas Supreme Court, nor from the Courts of Civil Appeals wherein writ of error has been outright refused, holding that the statute in question is unconstitutional. Under those circumstances, under the authority of the Court of Civil Appeals opinions above cited, we hold that Article 2922a, as amended in 1947, is constitutional.

We next examine the record from the standpoint of the "substantial evidence rule."

■ It is clear that this appeal is governed by the substantial evidence rule. Pyote Independent School Dist. v. Estes, 390 S.W.2d 3, writ ref., n. r. e.; Neill v. Cook, supra.

■ In a trial under the substantial evidence rule, on appeal to the district court from an order of an administrative agency, the proceeding is not a trial de novo. The plaintiff has the burden of proving the absence of substantial evidence, that is, the burden of proving that the action of the county board was illegal, arbitrary, capricious, unreasonable or discriminatory. It is the evidence adduced in the trial court, not in the hearing, if any, conducted by the administrative agency, which is determinative of the issue of substantial evidence. The issue of substantial evidence is one of law to be answered by the court—not a question of fact to be answered by the jury. Under the substantial evidence rule, the administrative order in question will be upheld if, considering the entire record in the trial court, that order finds reasonable support in the evidence. Board of Fireman's Relief & Retirement Fund Trustees of Houston v. Marks, 150 Tex. 433, 242 S.W.2d 181; Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022; Neill v. Cook, supra.

■ In determining whether there is substantial evidence to support a county board's order annexing one school district to another, it is helpful to compare the two districts involved. Pyote Independent School Dist. v. Estes, supra; Neill v. Cook, supra.

■ The evidence in the trial court showed that Eagle Lake has 549 scholastics in elementary school, 339 in junior high school, and 322 in high school—making a total of 1,210 scholastics in the district. Rock Island has 40 scholastics in elementary school, 16 in junior high school, and 27 in high school—a total of 83.

The property within the Eagle Lake district was assessed by the school district at a value of over $14,000,000.00, as compared to the State and County assessments of the same property at a value of about eight and one-half million dollars. The property in the Rock Island district was assessed by the school district at about seven and one-half million dollars and by the State and County at approximately the same figure. The tax rate used by the Eagle Lake district was $1.60 per $100.00 of assessed valuation and in Rock Island, the rate was $1.30. The bonded debt of Eagle Lake was over $400,000.00 and in Rock Island was $27,000.00. Thus, it is apparent that the tax payers of Rock Island had a considerable tax advantage over those of Eagle Lake and stood to incur some loss of that advantage as a result of the annexation.

In Eagle Lake, the education cost per year per student was $467.00 as to compare with $1,200.00 per year in Rock Island.

There were ten to eleven teachers in Rock Island district and fifty-six in Eagle Lake. The teacher-student ratio in Rock Island was one to eight and in Eagle Lake, one to twenty-one. In Rock Island, however, nearly all the teachers in junior high and high school were teaching some subjects for which they did not have the educational background necessary to meet the minimum requirements of the Texas Education Agency for the teaching of those subjects.

In Eagle Lake, the elementary, junior high and high schools were located on different campuses, while in Rock Island, they were all located on one. In Rock Island, the six grades of the elementary school were taught in three classrooms— two grades to each room. The different grades in elementary school had separate rooms in Eagle Lake. In Rock Island, there were three teachers for the six elementary grades and most of the other teachers taught classes both in junior high and in high school. In Eagle Lake, some teachers taught classes in both junior high and high school, but comparatively few.

The school building in Rock Island was comparatively new and in good condition. Some of the buildings in Eagle Lake were old but there were plans to build a new high school building near the center of the district.

Both school systems were accredited by the Texas Education Agency, but only Eagle Lake was accredited by the Southern Association of Secondary Schools and Colleges.

Though Rock Island increased the number of courses available to its students by changing the courses offered from year to year in four-year cycles, Eagle Lake offered a somewhat broader curriculum.

Applying the principals of the "substantial evidence rule," as set forth in the authorities cited above, we are of the opinion that the evidence presented to the trial court constituted substantial evidence in support of the County Board's order of annexation. That is to say, that reasonable men, sitting as members of the County Board, could have concluded that the facts presented to the trial court would indicate that the area affected by the annexation would benefit from such order. Pyote Independent School Dist. v. Estes, supra; Neill v. Cook, supra.

In the trial court the plaintiff offered evidence from which it could have been found, if relevant, that before January 12, 1967, three members of the County Board, McCreary, Wiese and Engstrom, secretly agreed to introduce and vote for the motion for annexation.

 In the first place, we are of the opinion that such a finding of fact would have been wholly irrelevant to this proceeding which was governed by the substantial evidence rule. In the application of that rule to this cause, it is presumed, once it is established, that the motion for annexation was passed in a lawfully held

meeting, following lawful procedure, that the members of the County Board were reasonable men acting in an honest effort to discharge their duties. The court is not concerned with their mental processes or motives, nor with the facts on the basis of which they acted—it is concerned only with what facts actually existed as shown by the evidence produced in court. If those facts are such that reasonable men in the honest exercise of their duty could have taken the action in question, then it is valid because it is presumed that the administrative agency acted on substantial evidence.

■■■ Of course, before the substantial evidence rule becomes applicable, it must be established that the administrative order in question was passed in a lawful meeting following lawful procedure. Conflicting testimony may present questions for the determination of a jury as to the existence of fact from which the legality of the meeting or the procedure followed in passing of the order may be concluded. For example, there might be conflicting testimony as to whether proper notice of the meeting was given. The answer to that question would be within the province of the jury. If the jury found, on sufficient evidence, that there was no such notice and the trial judge concluded that the meeting was not lawfully held, then the substantial evidence rule would have no application. There might be conflicting testimony giving rise to many other questions of fact to be answered by the jury before the legality of the challenged action of the administrative agency could be determined, but the alleged conduct of the three members of the County Board in making a prior agreement to pass the annexation resolution does not fall within that category. It is true that an agreement of a public officer to exercise his discretion to accomplish a particular result is illegal in contract law to the extent that it is unenforceable. 13 Tex.Jurisprudence 2d 387, "Contracts," Sec. 183. But such agreement does not disqualify the participants from voting or otherwise acting on the proposition which was the subject matter of the agreement. District Trustees of Campbellton Consol. Common School Dist. No. 16 v. Pleasanton Independent School Dist., supra.

■■■ The trial court properly refused to submit to the jury the issues relating to the prior agreement of the three members of the board.

On January 9, 1967, Herbert A. Schroeder, County School Superintendent and ex-officio secretary of the County Board, sent out, by post card, written notice of the time and place of the meeting to be held on January 12, 1967. The notice did not state what business was to be conducted at the meeting nor the purpose of the meeting. The sending of such notice was in accordance with the customary procedure of the Board. The meeting was not held on a date fixed by Article 2687, V.A.T.S., for the holding of statutory meetings. That statute, however, permits meetings to be held at other times than those dates fixed in the statute.

A few minutes before the meeting was to begin, one of the members of the Board, Oscar Class, telephoned to Schroeder, saying that he, Class, was having transportation difficulties and asking if anything important was to be conducted at the meeting. While there is some dispute as to just what Schroeder said in reply to the inquiry, his answer was generally in the negative and it may be assumed that he told Class that nothing important was to be done at the meeting. Class testified that because of that answer, he did not attend the meeting. He also testified that if he had attended, he would have opposed the annexation order. Class did not deny getting the written notice. There is nothing in the record to indicate that Schroeder intentionally made a false statement in his reply to Class.

■■■ The plaintiff requested special issues concerning this fact situation and the

trial court refused to submit them. We, therefore, assume that if they had been submitted, all of them would have been answered favorably to the plaintiff.

As noted above, these facts had no relevance to the substantial evidence rule question unless they showed that the procedure employed in calling and conducting the meeting rendered its action unlawful, thereby preventing the application of the substantial evidence rule.

■ It has clearly been held that notice of the meeting of an administrative agency to which the legislature has committed a matter (or the attendance of the unnotified member) is necessary to lend validity to action taken at the meeting. Webster v. Texas & Pacific Motor Transport Co., 140 Tex. 131, 166 S.W.2d 75. However, there is no requirement, statutory or otherwise, that the notice state the purpose of the meeting nor outline the action to be taken thereat. In Sawyer v. Board of Regents of Clarendon Jr. College, Tex.Civ.App., 393 S.W.2d 391, no writ history, notice by telephone and without stating the purpose of the meeting, was held sufficient.

■ The fact that Schroeder gave the member, Class, the wrong information (if he did) as to the business to be conducted at the meeting and thereby prevented his attendance, did not make the action of the Board unlawful. District Trustees of Campbellton Consol. Common School Dist. No. 16 v. Pleasanton Independent School Dist., supra.

We hold that the evidence above outlined, did not raise any question of relevant fact for the jury and the trial court properly refused to submit the requested special issues.

The minutes of the January 12, 1967, meeting of the County Board show that the four members other than Class were present. The motion calling for the annexation order was made by Wiese and seconded by the member, Beken. The motion carried by a vote of four to nothing.

There is no evidence that the minutes did not correctly show what happened at the meeting.

■ At the trial there was evidence that the member, Beken, who seconded the motion and voted for it asked, before doing so, if the people of the Rock Island area knew that the Board was going to consider the annexation matter, and was answered in the affirmative. There was also evidence that the people of the Rock Island district did not know that the annexation was to be considered by the Board. Beken testified that but for the erroneous information given him in response to his question, he would not have seconded and would have not voted for the motion.

The plaintiff again requested the submission of special issues relating to this phase of the testimony and the trial court refused to submit them.

■ The trial court properly refused the tendered special issues. This testimony neither raises a relevant fact issue nor shows, as a matter of law, that the annexation order was invalid. Even if Beken had voted against the motion (and disregarding the vote of the member, Engstrom), it would still have carried by a vote of two to one. There was a quorum present. Furthermore, Beken could not, by parol testimony, impeach his vote as shown by the admittedly accurate minutes of the meeting. District Trustees of Campbellton Consol. Common School Dist. No. 61 v. Pleasanton Independent School Dist., supra; Board of School Trustees of Lubbock County v. Woodrow Independent School Dist., Tex.Civ.App., 90 S.W.2d 333, no writ history. A rule of law which would permit a member of an administrative agency either to withdraw or to reverse his formal vote as shown by the correct minutes of that agency, after discovering new facts or discovering the error of those on which he had acted in mistake, would create a poor policy, indeed. Such a rule would destroy the stability of the administrative orders of

such agencies and destroy the value of their functions as a part of our governmental organization.

 At all times relevant to the litigation with which we are involved, Herbert E. Engstrom acted as a member of the County Board of School Trustees of Colorado County, Texas. He had originally been appointed to fill a vacancy on the County Board and was, in April, 1965, elected to a full term. In October, 1966, he was elected Supervisor of the Colorado Soil & Water Conservation District and qualified and accepted that position on October 14, 1966. The appellee concedes that both offices are offices of emolument and that Engstrom, by qualifying for the job of Supervisor of the Colorado Soil & Water Conservation District in October of 1966, automatically terminated his membership on the County Board of School Trustees.

The appellant contends that Engstrom's continuation of his action as a member of the Board, when he was not lawfully qualified, renders the action of the board in passing the annexation order, at least voidable and unenforceable.

Neither party has cited any Texas cases which are directly in point on the issue here involved. The nearest in point case is Thomas v. Abernathy County Line Independent School Dist. (Tex.Com.App.), 290 S.W. 152. In that case, two members of a seven-man board of trustees of a school district, after having been elected and qualified as members of such school board, became city aldermen. After qualifying as city aldermen, a meeting of the school board was held, attended by the two who had qualified as aldermen and three other board members. At such meeting, action was taken to call an election on a bond issue. The election carried and tax payers within the school district filed suit to have the proposed bond issue adjudged void because of the participation of the two aldermen in the school board meeting. The trial court denied the injunction sought by the plaintiff and the Court of Civil Appeals affirmed on the ground that the office of school trustee was not a civil office of emolument so that the subsequent qualification of the two aldermen did not disqualify them from continuing their activities as members of the school board. Thomas v. Abernathy County Line Independent School Dist., 278 S.W. 312. The Commission of Appeals reversed the trial court and the Court of Civil Appeals on the ground that the office of membership on the board of school trustees was incompatible with the office of city aldermen. The Supreme Court held that the aldermen, having qualified as such, automatically surrendered their office as members of the school board of trustees. Since they were no longer members of that board and only three other members attended the meeting at which the action being attacked was taken, it was held that there was no quorum at this meeting of the board of school trustees so that the action taken there (the authorization of the bond election) was invalid. The Supreme Court did not hold that participation in the meeting of the board of school trustees by the members disqualified in the acceptance of another incompatible office, rendered the action of the board void. It rather held, simply, that their membership on the board having been terminated, their presence could not be counted in determining the existence of a quorum.

The appellant cites a number of out-of-state cases wherein it has been held that the participation in the affairs of an administrative agency by one who is disqualified because of his personal financial interest in the action being taken by that agency is enough to render the action taken void even where the vote of the disqualified member is not necessary for the passage of the motion being considered or necessary to constitute a quorum. We think those cases distinguishable. No contention is here made that Engstrom had any such personal financial interest in the action taken by the County Board as to

**674**

disqualify his participation. He simply ceased to be a member of the board when he accepted a second office of emolument. Under those circumstances, his unlawful participation in the activities of the Board is not so colored by his own personal financial interest as to taint the entire action of the board. His presence was not necessary to constitute a quorum and his vote was not necessary to pass the motion leading to the annexation. We are of the opinion that the action of the County Board was valid despite the presence of Engstrom, and his participation in that action.

■ In the trial court, the plaintiffs offered the testimony of two witnesses, Galbreath and Day, both of whom were superintendents of small schools and each had been president of the Small School Association. Both testified as to the advantages of small schools. Both were asked hypothetical questions as to whether the students of a small school district gained advantage by annexation to a large one. The trial court, on objection, excluded their answers. Their testimony, on bills of exception, showed that they both would have answered the questions in the negative.

The appellant, by points of error, challenges such action of the trial court.

Those points of error are overruled. Even if their testimony were considered part of the statement of facts, we would still hold, as a matter of law, on the basis of the authorities heretofore cited, that there was substantial evidence in support of the School Board's order of annexation. Board of Fireman's Relief & Retirement Fund Trustees v. Marks, supra. The excluded answers had no relevance to any other issue in the trial. Their exclusion, if error, was harmless error. Rule 434, T.R.C.P.

The judgment of the trial court is affirmed.