

# The Attorney General of Texas

December 31, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Donald R. Ross
Rusk County Attorney
Rusk County Courthouse
Henderson, Texas    75652

Opinion No.  MW-580

Re:  Annexation power of rural
fire prevention district

Dear Mr. Ross:

You have asked whether a Rural Fire Prevention District located wholly within one county may annex territory that does not lie within the same county.  See  Tex. Const. art. III, §48-d.  In connection therewith you advise:

> The specific context in which these questions have arisen is as follows:  First, an attempt was made to create a Multi-county district (a district containing territory in two counties) pursuant to sec. 2(a) of [article 2351a-6, V.T.C.S.] and when the proponents of said district were denied their petition by the Commissioners Court in one of the two counties (see sections 5 & 6 of said article), instead of appealing that decision to the District Court (as authorized by sec. 7), they merely proceeded to create a district located wholly within the other adjacent county and then to achieve their original objective by way of annexation across the county line, relying on the provisions of sec. 14a.  After the purported annexation, the new district then requested the County Tax Assessor-Collector of the county in which the annexed territory is situated to assess and collect a tax of three (3¢) on the one hundred dollars ($100) valuation on all real and personal property in that territory.

Section 2(a) of article 2351a-6, added in 1973, governs proposals to create multi-county districts.  Petitions to call elections therefor must be presented to the county judge of each county wherein the district is sought to be created.  The commissioners court of each county may either approve or disapprove the petition, but if one grants the petition, the commissioners courts of each of the other such counties must also grant it before an election may be called.

Id. §8.  Elaborate provisions specify the manner in which the fire commissioners of an established multi-county district are to be elected.  Id. §13(a).

Before section 2(a) was added in 1973 there was no express provision in the statute that would allow a district created in one county to expand beyond the borders of that county.  Then, as now, section 2 of the statute (as opposed to the added section 2(a)) dealt with proposals to create a district "wholly within one county."

The same legislature that added section 2(a) also added section 14(a), which allows the Board of Fire Commissioners of a district, upon the petition of qualified voters who own taxable property outside the district, to add the territory of such property owners to the district by resolution (subject to later ratification by electors in both the district and the added territory).  There is no express "one county" limitation set out in section 14(a) and the argument has been advanced that pursuant to its terms a district created in one county may now expand into other counties without complying with the new provisions expressly allowing and regulating the establishment of multi-county districts.

In our opinion, section 14(a) cannot be used to circumvent the requirements of sections 2(a) and 8.  To appreciate the relationship of these provisions, it is helpful to review their legislative history.  Section 2(a) was added, and section 8 was amended, by chapter 260, Acts of the Sixty-third Legislature, enacting Senate Bill No. 764.  Section 14(a) was added by chapter 341 thereof, enacting House Bill No. 337.  Thus, during one session the legislature enacted two separate measures amending the same statute.

At the time they were introduced, the intended operation of neither measure was dependent upon the enactment of the other, and at the time they were passed, the operation of neither was dependent upon the governor's approval of the other.  The bill adding section 14(a), with its "annexation" provisions, was passed by the House on May 17, 1973, before it passed the bill authorizing multi-county districts on May 19, 1973, and the "annexation" enactment became effective June 12, 1973, almost three months before the "multi-county" provision went into effect.  See Acts 1973, chs. 260, at 609; 341, at 768.

For the period of time between the effective dates of the two enactments, districts could only be created "wholly within one county" pursuant to section 2, and it was the apparent intention of the legislature that during that interim, at least, the "annexation" provision would have no application to territory located without the county in which an annexing district had been created.  We think it continues to be so limited.

The statute now contains two provisions for selecting the fire commissioners of a district -- one (section 13) for districts created wholly within one county and another (section 13a) for multi-county districts. Section 13, which was part of the act before the 1973 amendments to the statute were adopted and has not since been changed, provides for the appointment of district fire commissioners by the commissioners court of the county within which the district was created. Section 13(a), which governs the selection of fire commissioners for multi-county districts (added by Senate Bill No. 764), provides for their election by a combined electorate in all the counties comprising the district. We do not think it was the intention of the legislature to leave to the commissioners court of only one county the selection of fire commissioners for districts embracing several counties.

Additionally, the original intention to restrict the operation of section 14(a) to counties in which districts were created is evidenced by the requirement of section 14(a)(3)(C) that the notice of the public hearing required before annexation may be effected is to be published "in a newspaper with general circulation in the county." While we believe this requirement may be adapted to annexations by established multi-county districts, we think its presence shows that section 14(a) was not originally intended to embrace annexations across county lines, at least not by districts established pursuant to section 2 of the statute. See generally 53 Tex. Jur. 2d Statutes §125, at 180.

The case of Neill v. Cook, 365 S.W.2d 824 (Tex. Civ. App. - Eastland 1963, writ ref'd n.r.e.), has been cited to us as supporting the view that the "annexation" provisions of section 14(a) should be read as providing an alternate means of establishing a multi-county district. We have no quarrel with Neill v. Cook, but it does not control the question here, which is one of intent. The Neill v. Cook court determined that the legislature intended to allow school authorities to annex territory in a manner that would accomplish the end result of "consolidation" without following the election procedure for consolidation. We have concluded that the intent of the legislature was not to allow annexation by Rural Fire Prevention Districts beyond county lines without first establishing a multi-county district pursuant to the procedure established by sections 2(a) and 8 of article 2351a-6, V.T.C.S.

Acts in pari materia enacted at the same session of the legislature are presumed to have been actuated by the same policy and imbued with the same spirit. Garrett v. Mercantile National Bank at Dallas, 168 S.W.2d 636 (Tex. 1943). The Sixty-third Legislature was careful to provide in detail for the cooperative interaction of all concerned counties with respect to any proposal for the establishment of a Rural Fire Prevention District across county lines. We do not

believe it intended by the enactment of the "annexation" provision to allow local fire commissioners to establish multi-county districts in disregard of those considerations.

## S U M M A R Y

A Rural Fire Prevention District located wholly within one county may not annex territory in a different county.

Very truly yours,

MARK  WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Bruce Youngblood
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Patricia Hinojosa
Jim Moellinger
Edna Ramon
Bruce Youngblood